IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BAILEY HILSON,<br><br>    Plaintiff,<br><br>vs.<br><br>WAUKEE COMMUNITY SCHOOL DISTRICT; BRAD BUCK, in his official capacity; and FAIROUZ BISHARA-RUNTIS, in her official capacity,<br><br>    Defendants. | No. 4:22-cv-00428-JEG-SBJ<br><br>ORDER |

This matter is before the Court on a Motion to Dismiss, ECF No. 13, filed by Defendants Waukee Community School District, Brad Buck, and Fairouz Bishara-Runtis.  Defendants seek dismissal of Plaintiff Bailey Hilson's Amended Complaint, ECF No. 12, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff resists.  No party requested a hearing, and the Court finds no cause for additional argument.  The matter is fully submitted and ready for disposition.

**I.  BACKGROUND**[1]

At all times relevant, Bailey Hilson was a student at Northwest High School in the Waukee Community School District.  She brings this action against the District, superintendent Brad Buck, and Northwest High School principal Fairouz Bishara-Runtis.  According to her operative Amended Complaint, Hilson attended a school-sponsored band trip to Omaha, Nebraska, on September 18, 2021.  Traveling with Hilson were multiple parent volunteers, who Hilson describes as improperly trained and unsupervised.  At some point during the trip, Hilson, who is black, alleges she was "singled out by her race and verbally and physically abused by one or

---

[1] At the pre-answer motion stage, the Court must accept the truth of the facts alleged in the complaint and grant all reasonable inferences to the plaintiff.  See Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 512 (8th Cir. 2018).

more parent volunteers due to her race." Am. Comp. ¶ 10, ECF No. 12.   In addition, Hilson and two other black students were required to sit in the back of the bus during the drive back from Omaha to Waukee.   Hilson characterizes her placement on the bus as "a pathetic and embarrassing scene reminiscent of our nation's history of segregation in public transportation." Id. ¶ 13.

The District conducted an investigation into Hilson's allegations of mistreatment on the September 18th band trip.   The investigation culminated in an investigative report and a referral to the Waukee Police Department.   Buck and Bishara-Runtis were directly involved in the investigation process.   According to Hilson, Defendants' response to her allegations was a "sham."   Id. ¶ 13.   She alleges the investigative report failed to address her allegations of race discrimination.   Id.   Hilson also alleges that Defendants knew the Waukee Police Department had no authority to investigate conduct that took place in Nebraska.

Hilson asserts that one or more unnamed parent volunteers continued to harass her after the September 18th band trip.   Specifically, Hilson alleges the volunteers stalked her and other black students at school and at school events.   Hilson alleges she told District officials that she felt unsafe at school, but they refused to assist her.   She further alleges the District allowed the parent volunteers to "pursue a complaint" against Hilson but refused to investigate her own claim of retaliation.   Id.

On July 5, 2022, Hilson filed an administrative complaint against Defendants with the Iowa Civil Rights Commission.   She received a right-to-sue letter and, on November 18, 2022, commenced this lawsuit in the Iowa District Court for Dallas County, asserting various state and federal claims against the District, Buck, and Bishara-Runtis.   Defendants timely removed. They then filed a motion to dismiss Hilson's petition under Federal Rule of Civil Procedure 12(b)(6), arguing Hilson had failed to allege facts sufficient to support any of her theories of

liability. Hilson resisted dismissal and also moved to amend. The Court granted Hilson leave to revise her pleadings.

On January 24, 2023, Hilson filed her Amended Complaint, ECF No. 12. The Amended Complaint enumerates eight causes of action: (1) common law negligence; (2) intentional infliction of emotional distress; (3) bullying, in violation of Iowa Code § 280.28; (4) assault and battery; (5) due process violations under state and federal law; (6) equal protection violations under state and federal law; (7) violations of the Iowa Civil Rights Act and the federal Civil Rights Act of 1964; and (8) a "violation of public policy by creating and maintaining an unsafe environment." Am. Compl. ¶ 15, ECF No. 12. Defendants subsequently refiled their motion to dismiss under Rule 12(b)(6). They contend Hilson's Amended Complaint continues to allege insufficient factual matter to plausibly support any of her legal claims.

## II. DISCUSSION

### A. Standard for the Motion

"To survive a motion to dismiss, a complaint must plead sufficient factual matter to 'state a claim to relief that is plausible on its face.'" Edwards v. City of Florissant, 58 F.4th 372, 376 (8th Cir. 2023) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is facially plausible if the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ahern Rentals, Inc. v. EquipmentShare.com, Inc., 59 F.4th 948, 953 (8th Cir. 2023) (internal quotation marks and alteration omitted) (quoting Iqbal, 556 U.S. at 678)). "If, on the other hand, the plaintiff pleads facts that are merely consistent with a defendant's liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citation omitted); accord Edwards, 58 F.4th at 377 ("[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." (quoting Iqbal, 556 U.S. at 679)).[2]

In deciding whether a complaint satisfies the plausibility test, the Court must "accept 'as true the complaint's factual allegations and grant[] all reasonable inferences to the non-moving party.'" Park Irmat Drug Corp. v. Express Scripts Holding Co., 911 F.3d 505, 512 (8th Cir. 2018) (alteration in original) (quoting Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009)). This rule "is inapplicable to legal conclusions," which the Court may disregard. Iqbal, 556 U.S. at 678. Likewise, "'naked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Roberson v. Dakota Boys & Girls Ranch, 42 F.4th 924, 928 (8th Cir. 2022) (quoting Iqbal, 556 U.S. at 678). With few exceptions, the Rule 12(b)(6) analysis is constrained to factual matter alleged in the complaint. See Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 (8th Cir. 2012) ("[T]he court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." (citations omitted)).

---

[2] Hilson urges the Court to review her Amended Complaint under a more permissive notice pleading standard. Quoting Conley v. Gibson, 355 U.S. 41 (1957), she argues that "the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim" and that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Pl.'s Resist. 2, ECF No. 14-1. However, the Supreme Court retired Conley's no-set-of-facts test over fifteen years ago. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). And although notice pleading remains the norm under Iowa law, see Victoriano v. City of Waterloo, 984 N.W.2d 178, 181 (Iowa 2023), it is axiomatic that this Court must apply federal pleading requirements upon removal, see Christiansen v. W. Branch Cmty. Sch. Dist., 674 F.3d 927, 938–39 (8th Cir. 2012).

**B. Hilson's Federal Claims**

Because the Court's removal jurisdiction in this matter is based on federal questions, see 28 U.S.C. §§ 1331, 1441(a), the Court turns first to Hilson's claims under the Due Process Clause, the Equal Protection Clause, and Title VI of the Civil Rights Act of 1964.[3]

   1. Due Process

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This language confers two different protections: procedural due process and substantive due process. Procedural due process requires states to observe minimum procedural safeguards before depriving a person of a protected interest—generally, "notice and . . . an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" Mitchell v. Dakota Cnty. Soc. Servs., 959 F.3d 887, 897 (8th Cir. 2020) (quoting Swipies v. Kofka, 419 F.3d 709, 715 (8th Cir. 2005)). Substantive due process, by contrast, "protects individual liberties from government action 'regardless of the fairness of the procedures used to implement them.'" Id. at 898 (quoting Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010)).

Hilson brings a substantive due process claim. To prevail, she must "demonstrate that a fundamental right was violated and that the [Defendants'] conduct shocks the conscience." Id. (citing Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013)). According to Hilson, Defendants violated her right to be free from discrimination at school by allowing unsupervised volunteers to attend the band trip, by failing to protect her from the volunteers' subsequent harassment, and by otherwise "[r]efusing to assist [her] in dealing with the ramifications of the incident." Am. Compl. ¶ 13, ECF No. 12. Hilson also alleges Defendants "actively

---

[3] A plaintiff may bring suit under 42 U.S.C. § 1983 to redress a state violation of her federal rights. Although Hilson has not explicitly pleaded a § 1983 claim, the parties agree that the constitutional violations she alleges are actionable under § 1983. See Defs.' Br. 9 n.1, ECF No. 13-1; Pl.'s Resist. 4, ECF No. 14-1.

participat[ed] in the racial discrimination" and "encouraged [her] continued victimization" by the volunteers.  Id. ¶ 15.

Generally speaking, there is no substantive due process right to governmental protection against private harm.  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 203 (1989).  Exceptions exist only when a plaintiff "is in the state's custody against her will" or when the state "created the danger" that harmed the plaintiff.  K.B. v. Waddle, 764 F.3d 821, 824 (8th Cir. 2014) (citations omitted).  Hilson argues this is a created-danger case.  However, Eighth Circuit precedent is clear that neither the created-danger exception nor the custodial exception entitles a student to protection from private misconduct at school.  See Lee v. Pine Bluff Sch. Dist., 472 F.3d 1026, 1030 (8th Cir. 2007) ("[S]tate-mandated school attendance does not entail so restrictive a custodial relationship as to impose upon the State the same duty to protect it owes to prison inmates, or to the involuntarily institutionalized." (quoting Dorothy J. v. Little Rock Sch. Dist., 7 F.3d 729, 732 (8th Cir. 1993))); Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 781 (8th Cir. 2001) (explaining "school districts are not susceptible to [the] state-created danger theory").  Hilson's allegations that District officials failed to protect her from mistreatment by parent volunteers cannot support a substantive due process claim.  See Montgomery v. Indep. Sch. Dist. No. 709, 109 F. Supp. 2d 1081, 1096 (D. Minn. 2000) (explaining "representations that [a school district] would respond to students' sexual harassment reports did not give rise to a constitutional duty to protect").

Hilson argues her failure-to-protect theory is nevertheless viable because the parent volunteers who mistreated her were not private citizens but agents of the District.  The Eighth Circuit has not resolved when, if ever, a school volunteer might qualify as a state actor.  See S.J. v. Kan. City Mo. Pub. Sch. Dist., 294 F.3d 1025, 1028 (8th Cir. 2002) (finding a school volunteer's assault on student outside of school was not "under color of law" and declining to reach the question of "whether a school volunteer can ever be a state actor for purposes of

§ 1983"). But even assuming the volunteers in this case were District agents, that is not enough to establish a constitutional claim against the District. "A school district cannot be held liable under § 1983 on a *respondeat superior* theory, *i.e.,* simply because it employs a tortfeasor." Lee, 472 F.3d at 1029–30 (citation omitted). Rather, a district is only liable for the individual acts of its personnel if the "constitutional violation was committed pursuant to an official 'policy or custom'" that "was the moving force behind [the] plaintiff's injury." M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1, 544 F.3d 885, 890 (8th Cir. 2008) (quoting Monell v. Dep't of Social Servs., 436 U.S. 658, 694–95 (1978)). Hilson's Amended Complaint alleges no official policy to which the actions of the parent volunteers are attributable, nor does she allege these actions were part of a widespread pattern of unconstitutional conduct.[4] See Lee, 472 F.3d at 1030 (affirming dismissal where no policy or custom was alleged).

Supervisory officials are also insulated from vicarious liability under § 1983, although they may be held personally liable for their own misconduct. See S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015) (citing Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010)). Hilson suggests Buck and Bishara-Runtis personally participated in the discrimination against her through "both action and inaction." Am. Compl. ¶ 13, ECF No. 12. More specifically, the Amended Complaint attributes the following conduct to Buck and Bishara-Runtis: (1) overseeing an investigation that "totally ignor[ed] the racial aspects" of the band trip incident, (2) filing a

---

[4] To be sure, Hilson asserts in her briefing that Defendants "created and implemented a policy intentionally creating an overt atmosphere" that made Hilson feel unwelcome at school. Pl.'s Resist. Br. 5, ECF No. 14-1. However, the Court will not rely on factual matter alleged in the briefing to evaluate the sufficiency of Hilson's Amended Complaint. See McAuley v. Fed. Ins. Co., 500 F.3d 784, 787 (8th Cir. 2007) (stating that a Rule 12(b)(6) motion will "succeed or fail based upon the allegations contained in the face of the complaint" (quoting Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992))). Even if the Court were to accept this conclusory allegation, Hilson's pleadings still fail to plausibly show that the alleged policy was the moving force behind the volunteers' actions.

police report with a law enforcement agency they knew lacked jurisdiction, and (3) falsely promising Hilson that corrective action would be taken. Id. ¶ 13.

To rise to the level of a due process violation, a defendant's behavior must be so egregious that it "shocks the conscience." Shrum, 249 F.3d at 779 (citation omitted). This is a "high fault standard" designed to separate "constitutionally-based § 1983 liability from traditional tort law claims." Id. Hilson's allegations fall short. Even if Buck and Bishara-Runtis conducted an inadequate investigation that failed to seriously respond to Hilson's reports of mistreatment, their alleged behavior is not conscience-shocking. See, e.g., Hankey v. Town of Concord-Carlisle Sch. Dist., 136 F. Supp. 3d 52, 71 (D. Mass. 2015) (finding no due process violation despite the fact that school administrators' inquiry into the plaintiff's allegations of harassment "may well have been unreasonable and ineffective in some respects"); Wolfe v. Fayetteville, Ark. Sch. Dist., 600 F. Supp. 2d 1011, 1022 (W.D. Ark. 2009) (finding allegations that a vice principal gave incomplete information to police and failed to investigate years of antigay harassment failed to state a substantive due process claim); Yap v. Oceanside Union Free Sch. Dist., 303 F. Supp. 2d 284, 295–96 (E.D.N.Y. 2004) (finding administrators' refusal to transfer or accelerate an elementary student in response to racially motivated harassment was not conscience-shocking). Hilson has failed to state a plausible substantive due process claim.

2. Equal Protection

Hilson also asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause . . . commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." Stevenson v. Blytheville Sch. Dist. #5, 800 F.3d 955, 970 (8th Cir. 2015) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)). To establish an equal protection violation, a plaintiff must show that she "was treated differently than other persons who were in all relevant respects similarly situated."

Schmidt v. Des Moines Pub. Sch., 655 F.3d 811, 820 (8th Cir. 2011) (quoting Flowers v. City of Minneapolis, 558 F.3d 794, 798 (8th Cir. 2009)); see also Keevan v. Smith, 100 F.3d 644, 648 (8th Cir. 1996) ("[T]he initial inquiry in any equal protection claim is whether the plaintiff has established that she was treated differently than others who are similarly situated to her." (citations omitted)).  When the disparate treatment is "based on a suspect classification, such as race," strict scrutiny applies.  Stevenson, 800 F.3d at 970 (quoting Exec. Air Taxi Corp. v. City of Bismarck, 518 F.3d 562, 566 (8th Cir. 2008)).  When "no suspect classification is involved, . . . the State need only show that the differential treatment is rationally related to a legitimate state interest."  Id. (alteration in original).

Hilson first argues that Defendants violated her equal protection rights "by failing to act in a reasonable manner in dealing with the racially discriminatory actions of the parent volunteer" and "by failing to take further steps after realizing that their initial remedial actions were inadequate."  Am. Compl. ¶ 15, ECF No. 12.  Although states generally have no constitutional duty to protect citizens against private misconduct, the Equal Protection Clause prohibits states that do from selectively denying their protective services.  DeShaney, 489 U.S. at 197 n.3; Villanueva v. City of Scottsbluff, 779 F.3d 507, 511 (8th Cir. 2015).  Here, however, the Amended Complaint makes no allegation that the District, Buck, or Bishara-Runtis treated Hilson differently from other similarly situated Northwest High School students.  Although Hilson expressly asserts the parent volunteers assaulted and harassed her on the basis of her race, nothing in the pleadings suggests the remedial measures Defendants offered Hilson were different from those provided to non-black students who report misconduct at school.  Absent an allegation of disparate treatment from similarly situated individuals, Hilson's equal protection claim must fail.[5]  Schmidt, 655 F.3d at 821 (finding a plaintiff's equal protection claim

---

[5] Hilson does suggest that Defendants treated her differently than the *parent volunteers* by "[r]efusing to investigate a claim of retaliation" filed by Hilson while "allowing [the

necessarily failed where she was "not similarly situated in all relevant respects" to the comparators she alleged); cf. Montgomery, 109 F. Supp. 2d at 1097 (denying summary judgment on a student's equal protection claim due to a factual question about "whether the other students whose complaints were treated more seriously were similarly situated with plaintiff").

Hilson also asserts that Defendants are liable for an equal protection violation because their faulty recruitment, training, and supervision of the parent volunteers constituted deliberate indifference. It is true that deliberate indifference can create supervisory liability under § 1983. See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 415 (1997). However, to prevail on this theory, Hilson must show that the District "had reason to believe, before the events giving rise to this case, that its training or supervision of [the volunteers] was inadequate." Atkinson v. City of Mountain View, 709 F.3d 1201, 1217 (8th Cir. 2013) (quoting Parrish, 594 F.3d at 1002); see also Morris v. Crawford Cnty., 299 F.3d 919, 923 (8th Cir. 2002) (concluding that, for a deliberately indifferent recruitment claim, "a plaintiff must point to prior complaints in an applicant's background that are nearly identical to the type of misconduct that causes the constitutional deprivation allegedly suffered by the plaintiff").

Nothing in the Amended Complaint suggests that the District, Buck, or Bishara-Runtis were aware of previous misconduct by the parent volunteers or were informed of a deficiency in their training or supervision. Without any allegation of notice, Defendants cannot be held liable for the parent volunteers' discriminatory treatment towards Hilson. See Atkinson, 709 F.3d at

---

volunteers] to pursue a complaint against" her. Am. Compl. ¶ 13, ECF No. 12. However, "[t]reatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Keevan, 100 F.3d at 648 (citation omitted). To the extent Hilson contends Defendants' different treatment of student and parent complaints violates her equal protection rights, Hilson's status as a student is not a suspect classification subject to strict scrutiny, and her minimal allegations fail to plausibly show that Defendants lacked any rational basis for handling the complaints differently. See, e.g., Stevenson, 800 F.3d at 973–74 (affirming summary judgment on an equal protection claim where there was a conceivable rational basis for a school district's differential treatment).

1217 ("Absent some form of notice, the city cannot be deliberately indifferent to the risk that its training or supervision of [the defendant officer] would result in a violation of a particular constitutional or statutory right." (internal quotation marks and citation omitted)); Jiang v. Porter, 156 F. Supp. 3d 996, 1010 (E.D. Mo. 2015) (dismissing an equal protection claim where the complaint alleged no "factual allegations to demonstrate the City adopted deficient supervision or training practices or had actual or constructive notice of a pattern of unconstitutional acts committed by its police officers"). Hilson has failed to state a plausible equal protection claim.

    3. Title VI

Hilson's third federal claim is for a violation of her rights under Title VI of the Civil Rights Act of 1964. Title VI prohibits discrimination in federally funded programs and activities. See 42 U.S.C. § 2000d. An implied private right of action is available under the statute. See Barnes v. Gorman, 536 U.S. 181, 185 (2002). To prevail, a plaintiff must show that her "race, color, or national origin motivated the defendant's discriminatory conduct." Rowles v. Curators of the Univ. of Mo., 983 F.3d 345, 355 (8th Cir. 2020) (citing Thompson v. Bd. of Spec. Sch. Dist. No. 1, 144 F.3d 574, 581 (8th Cir. 1998)). One way to do this is to show the plaintiff was "treated differently from others similarly situated." Does 1-2 v. Regents of the Univ. of Minn., 999 F.3d 571, 580 (8th Cir. 2021) (citing Rowles, 983 F.3d at 355). Because Hilson makes no allegation that *Defendants* treated her differently than similarly situated non-black students, she has not stated a plausible disparate treatment claim. See id. at 581 (upholding dismissal of a Title VI claim where the plaintiffs' complaint "[did] not allege facts showing that similarly situated [alleged comparators] were treated differently").

A plaintiff may also seek relief under Title VI based on a defendant's failure to adequately respond to third parties' racial hostility. For this type of claim, Hilson must show that Defendants were "(1) deliberately indifferent, (2) to known acts of discrimination, (3) which occurred under [their] control." K.R. ex rel. Proctor v. Duluth Pub. Sch. Acad., 591 F. Supp. 3d

418, 428 (D. Minn. 2022) (quoting Shrum, 249 F.3d at 782). "[S]uch an action will lie only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." Id. (alteration in original) (quoting Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 633 (1999)). Additionally, "a school district will only be liable for situations in which it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" Shrum, 249 F.3d at 782 (quoting Davis, 526 U.S. at 646) (applying an identical standard under Title IX).

Hilson contends she experienced severe and pervasive racial discrimination at the hands of the parent volunteers and that Defendants failed to take appropriate remedial action. However, the threadbare allegations of her Amended Complaint do not plausibly support this claim. Although Hilson alleges that she was "verbally and physically abused" by a parent volunteer during the band trip and "stalk[ed]" by volunteers at other school events, Am. Compl. ¶¶ 10, 13, ECF No. 12, she fails to characterize this alleged misconduct with any degree of factual detail.[6] The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. The only specific conduct Hilson asserts is being made to sit in the back of the school bus during the trip back to Waukee from Omaha. Even assuming that the District had sufficient control over the parent volunteers in the context of the trip back from Omaha, this lone incident falls short of the severe and pervasive harassment necessary to support a racial hostility theory. Compare Ellis v. Houston, 742 F.3d 307, 320–21 (8th Cir. 2014) (finding black correctional officers raised a triable Title VII harassment claim where their supervisors' "back of the bus" slurs were "part of

---

[6] Hilson elaborates in her briefing that a parent volunteer "touched [Hilson] on the forehead with her finger" during the band trip altercation. Pl.'s Resist. Br. 12, ECF No. 14-1. Because the Court constrains its Rule 12(b)(6) inquiry to the face of the complaint, the Court need not resolve whether the touch of a finger can support a plausible racial hostility claim under Title VI.

a broader pattern" of harassment, including "racist remarks on a near daily basis"), with Hughes v. Int'l Paper Co., No. 3:20-0228, 2020 WL 5900960, at *6 (M.D. Tenn. Sept. 8, 2020) (finding a supervisor's isolated "back of the bus" comments could "reasonably be construed as being tinged with a racial aspect" but were insufficiently severe or pervasive to support a plausible Title VII racial hostility claim). Hilson has failed to plausibly allege a Title VI claim.

### C. Hilson's State Claims

Because Hilson has failed to state a federal claim, there remains no basis for original jurisdiction under § 1331. "[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Marianist Province of U.S. v. City of Kirkwood, 944 F.3d 996, 1005 (8th Cir. 2019) (holding a district court abused its discretion in adjudicating state law issues following the dismissal of all federal claims).

Here, the relevant factors weigh against assertion of supplemental jurisdiction. Because this case remains at the pleading stage, sending it back to state court will come at no cost to judicial economy or convenience. By contrast, it is fair to allow Hilson to pursue her state claims in the forum of her original choosing. Comity principles also favor remand because at least one of Hilson's claims—namely, "[b]ullying, in violation of Iowa Code § 280.28"—raises a question of actionability not yet addressed by Iowa's appellate courts. See Marianist Province, 944 F.3d at 1003 ("Generally, needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed

reading of applicable law." (cleaned up)).   Given that the statute of limitations may have passed on one or more of Hilson's remaining claims, the Court concludes that remand is the appropriate disposition.   See Cohill, 484 U.S. at 357.

### III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 13, must be **GRANTED IN PART AND DENIED IN PART**.   Defendants' motion must be granted with respect to Hilson's claims under the Due Process Clause, the Equal Protection Clause, and Title VI of the Civil Rights Act of 1964, which are hereby **dismissed without prejudice**.   The Court declines supplemental jurisdiction over Hilson's state law claims and therefore must deny the balance of Defendants' motion.   This case is **remanded** to the Iowa District Court for Dallas County.

**IT IS SO ORDERED.**

Dated this 17th day of April, 2023.

_____
JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT